313-087-1, County Soil and Water Conservation District, Appalachia by Jeff and Jody v. Steve Walters, and Steve Walters Logging and Transport Incorporated and Robert O'Dell and Business as Robert O'Dell Logging, Appellants, by Christopher Silver. Counsel, you may proceed. Thank you. May it please the court, opposing counsel, good afternoon, my name is Chris Sokin of King, Erie, Derry, Wakeman, and O'Donnell, and I represent the appellants, Steve Walters, Steve Walters Logging and Export Inc., which is an Iowa corporation, and Robert O'Dell Logging. Because the facts are so important to some of the elements, legal elements of this case, I'd just like to briefly discuss them, although I know the panelists read them. Walters Logging is a corporation that does logging. They found some land that had some good timber that they liked to log on in Warren County, was owned by Martha Biederbeck. And actually the ownership of that land is one of the issues. Steve Walters, as a director of Walters Logging, went to that property and discovered it was fenced in on all sides, that he reviewed the plat book that showed that Martha Biederbeck owned that property all north of the interstate. And he had his counsel find two deeds that said Martha Biederbeck owned that property. They entered into a logging contract with Ms. Biederbeck in which she warranted her right to convey the timber, warranted that she owned the land, and they agreed to do the logging and the logging was performed. That was back in 2007. Sometime after the logging was performed, the appellants were approached by the state's attorney for Warren County, wanted to know what the rights were had to do the logging. Walters Logging had their corporate counsel meet with the state's attorney in Warren County. They went to the land themselves and looked over the land, saw that it was fenced in, discussed the deeds. They believed the matter was resolved. A year later, Walters Logging got a call from the assistant attorney general's office wanting to know about the logging. Again, they had the same discussion. Here are the deeds, here are the plat books, here is our logging contract. And again, they thought that was the end of the dispute. That, in fact, she owned the land, here were the contracts and the deeds, and this showed that everything was fine with the logging. Sorry about that. That's okay. Over two years after that, the case was not yet resolved and suit was filed by the Warren County Soil and Water Conservation District, who is the appellee. Because the appellants were out of state, they had to hire local counsel. Their corporate counsel was only licensed in Iowa. Now that you've intrigued us with all these facts that may or may not go to any of the legal issues here, okay, why is Warren County Soil and Water Conservation here? Why are they here? Yeah, I mean, we've got the attorney general, so somebody wants to complain to the attorney general. I am not certain, Your Honor, how we got to this point. My assumption is there was initially a thought this might have been a criminal matter, which is why the local state's attorney was involved. I don't know why the attorney general's office was involved, but obviously it came back to being a civil issue, and the Soil and Water Conservation District is the one who got involved. I'm sure Mr. DiGiudi could explain why we reached out. Were these conservation trees that were planted that couldn't be logged? I don't know, and that's going to go to an issue in the complaint, because the complaint says that the land that's owned by Martha Biederbeck that the logging was done on abuts property that was allegedly owned by the Water Conservation District. The problem is in their complaint they say that they abut, and there's a creek that separates them, and they allege that the appellants went over that creek and cut some of the logs that belonged to them. The problem is there's no deed attached to the complaint. They attached a legal description of the land without any file stamps or indicia that it was a true deed, any recorder stamps. It was just a legal description. The other problem is the legal description described property in Section 21. So it's basically you were on my property and took my logs? Correct. So it wasn't a lien of some type of nature with a contract through Soil and Water Conservation? No, it's just a simple trust pass and you cut down the wrong trees. The problem is the complaint describes a different property than where the land is that the trees were cut down. It describes land in Section 21 of the township. If you look at the plat book, which was attached to the affidavits my clients filed originally in the 2-1401 petition, it shows that there's a Section 20 between Section 19 and Section 21. They do not abut. The complaint filed by the appellee was internally inconsistent. They did not abut. There couldn't have been this creek that was crossed. But the true problem here is that they hired an attorney who didn't follow up on his appearance. Correct. They hired Christopher Tichenor. Mr. Tichenor failed to appear after he received the retainer. It was case management confidentiality. He did not appear. A default judgment was entered. He did not appear on the default judgment. The only time he did actually appear, and he did not physically appear, he filed a motion under 1301 to vacate the default. In his motion, he did not allege any meritorious defenses or say here are the reasons why we would fight this. He said I have been dilatory. He said my father was very ill. My father passed away. I haven't been able to attend to my business. He did say my clients had given me the answers to the complaints and I simply failed to file them. What happened to Mr. Tichenor after that is simply unknown. He did not appear at the hearing on his motion to vacate the default. The appellees called it up themselves and the motion was denied, not because of any of the reasons that were cited in the motion, but because he failed to appear again. He failed to cooperate in scheduling the motion. He didn't appear. So the default was entered. And at that point, Mr. Tichenor somehow managed to remain in the case as counsel of record for over a year. During that year, Steve Walters Logging had local counsel. They did. Why didn't local counsel check on the case? I mean, I understand why laymen may let it go, but the logging company had an attorney who retained Mr. Tichenor. Correct. And that issue was going to be one that certainly opposing counsel raised in their brief, that this attorney was negligent. We should hold that negligent on the appellants, and they should have been more diligent in looking at their case. I would submit that that's not the true issue at this point in this case, because we've never argued, and it's difficult, admittedly, to argue that the appellants were strictly diligent. Certainly, in hindsight, they should have been looking in on their case and checking and seeing what had happened. But there's some mitigating factors here in the fact that we're now seven years outside of this logging, and they had very meritorious defenses. They were under the impression that, wait a minute, we were bona fide purchasers for value. We had no notice that they owned this land. We have two deeds that show she did own the land. We have a plaque book that says she owns the land. We have a contract that says she warranted title to the timber. They were under the impression this was a title dispute between Miss Biederbeck and between the Soil Conservation District, and they were just basically along for the ride. Now, granted, that's not a great excuse for not following along, but it's understandable, given how long that it had dragged out, that they would focus their attention on other things, thinking they had an attorney who was there keeping track of the case. The other interesting point is, at some point... The attorney that was later removed from the... Mr. Tichenor, correct. The other interesting point, Mr. Tichenor was at some point disbarred. He was disbarred in the last year according to the Attorney Registration and Disciplinary Commission. How do you know that? The Attorney Registration and Disciplinary Commission website lists the last year that an attorney was licensed to practice law. The last year that he was licensed was 2011. That doesn't mean he was disbarred. He may have just elected not to pay for a new license. If you read my client's, Mr. Walter's, affidavit, he stated that he was contacted by the Supreme Court, and that is what they informed him, that he had, in fact, been disbarred. It's all hearsay. It is. I don't know if that's by consent or not. All we do know, certainly, is that the last time he was licensed to practice law was in 2011. He continued his counsel of record in the case well into 2012. The default judgment was taken, I believe, in June of 2011. No collection activities or anything was begun well into 2012. I believe September of 2012 was the first time that any collection activity had actually happened. So the case was basically in stasis. Nothing was really happening. So do you know whether he was not licensed when he entered his only filing in the case on July 22, 2011? I do not, Justice. You have not argued that he was engaged in the unauthorized practice of law? I have not argued that because I simply cannot prove it. The only thing I have to go on is my knowledge of when MCLE requirements are due, which is by the last name, as the court knows. Tichenor is a lot like Sokin. I know that ours are due right about that time in July. And based on his last name on odd years, it would have been due at that point. My guess would be he did not complete his CLE given the problems he was having with his father. He got the letter from the Supreme Court saying, you need to complete your CLE. Here's your grace period. He didn't do it. He was removed from the master rolls probably within a couple months. Does that mean you're disbarred? Well, I suppose not, but it means you're not an attorney anymore. You're not licensed to practice law. And if that is the case, the notices that were sent to Mr. Tichenor are not valid on the appellants because that's not valid notice. Unless they have an attorney-client relationship, those notices can't be valid. If he is not on the master roll of attorneys in the state of Illinois, those notices went to nowhere. And I think that's a mitigating factor that the court should look at and say, well, true they had counsel, but if he wasn't licensed, he's the only one getting these notices. He was licensed. He was licensed January 1, 2012. Yes, at some point he was. 2011. At some point he was licensed. And if the Supreme Court takes disciplinary action against someone, they issue an order. They do, and they have not. And you haven't found any order. I have not. But you allege he's disbarred, and that's pretty strong language. Well, that's based on what my client was told, and I understand it. That's what he was told by what he believed to be the Supreme Court when they contacted him, that he had been disbarred. That might have been a layman calling to tell him that and simply misuse the phrase rather than he failed to complete his COE and was simply removed. I don't know. No one's been able to contact him, as the trial court noted. Numerous attempts have been made to contact his office. No one knows where he is, where he went. And that, as I said, he didn't have malpractice insurance. No one's been able to find him. He did not have another firm to step in for him to defend the case. It was simply a sole practice. Nobody really knew what he meant. All this time, from July 22nd until when the court entered its order on August 29th of 2012, the court was trying to contact Mr. Tickner. Your client's affidavits do not indicate they made a single attempt to try and contact him. They do not. They do not, and that was a matter that is before the court. I think that's the ultimate matter is the court is an appellate's counsel or an appellate's counsel has raised this. The negligence of attorney isn't normally going to be imputed on the clients. The question here is whether, under Section 2-1401, the court could relax that standard, relax the diligence requirements, and say, this is an unjust situation. Regardless of that year that they let by that they weren't diligent, I still can't allow this judgment to stand because it's unjust. That's the true question, whether or not they were diligent. Did the trial court find that its reading of the case law, the Supreme Court case in particular, that it could not relax? Yes and no. The question is what case you look at from which district and when. Because after that decision in Vincent in which the Lucas case in the first district said, well, we no longer have discretion, two cases out of this district said, well, we have discretion and we're going to relax it. Neither of those cases, which would have been a Ropanac and then, I believe, Knoss, both are cited in my brief, neither addressed Vincent to the point of do we still have the ability to relax the diligence standard. They discussed it in regards to the standard of review, but not toward this issue of did Vincent really mean what the Lucas decision said it meant. And the interesting thing about the Lucas decision is the Ropan decision, which was out of the same court, I believe less than six months later, said, you know, that's not right. We're not going to follow that. They followed the Borghetti decision out of the second district that says we don't really agree with the Vincent rationale. It was admittedly dicta, some of those parts of that. Okay, and in our district we have Ropanac, right? Correct. Okay. Now, while we're talking about those other cases, an interesting question is what is the standard of review for this court? And the answer is it depends on who you ask. If you ask this court in Ropanac, it's manifest weight. If you ask this court before that, it knows it's abuse of discretion. Vincent doesn't say. In dicta they say it can't be abuse of discretion. Ropan says it's de novo for the meritorious defenses, but everything after that is abuse of discretion, which is the same thing the Borghetti case holds. And then the Lucas decision says, well, we're not even going to reach that because there's no discretion anyway. There just isn't, so we don't have to even determine that. I would submit that the proper standard of review for this court is either a complete abuse of discretion or de novo on the meritorious defenses because that seems like something that could be easily reviewed by our viewing panel. But then the decision about due diligence, that's a mixed question of fact and of law. That's really not appropriate for de novo review that I think would be more subject to an abuse of discretion. But what the trial court actually found, speaking of the meritorious defenses, was that there were multiple meritorious defenses. One I already discussed is that it appeared that Appellees don't actually own the land. The trial court held that, that looking at the plat book, looking at the deeds, it appeared that Martha Biederbeck owned the land, she entered the logging contract with the appellants, and she rightfully gave that right. If that's the case, then Appellees have a default judgment that they were legally not entitled to because they could not prove they actually owned the land. You're not alleging any fraud on their part? We are not, no. I understand exactly why they did it, and were I in counsel's shoes, I would have done the same thing. You have someone not appearing, you move for a default judgment, it's a matter of course, I understand why they did that. The problem was, from my client's perspective, they had these defenses that are so absolute, as the trial court noted. What are those defenses? The fact that Martha Biederbeck actually owned the land. If she actually owns the land, they can't get a judgment for wrongful tree cutting. They have a judgment for rightful tree cutting, is what they would have. My client's negotiated by a contract to have the rights to log, she owned the land, she gave it to them. They're bona fide purchasers for value. They paid for the right to log the trees, they found two deeds that said she owned the property, she had the whole property fenced in, the plat book says she owns the land, she says she owns the land. Whatever standard of inquiry the court holds for a bona fide purchaser, they've met that. They've more than inquired about who owned the land. Steve Walters was held liable for a corporate act, with no allegation of a corporate piercing, nothing to indicate why he personally should be liable, not the corporation who actually did the logging. Mr. O'Dell, the trial court held, he was never even on the land. He leased some equipment for use on the land, but he never stepped foot on it, yet he has a personal judgment against it. Those defenses are, I would argue, are more than meritorious. The bona fide purchaser is basically absolutes. They had no notice that anyone else owned the land, and they went more above and beyond the duty that they would have to look into that matter. And I would... Well, if they only looked into what their attorney was doing as diligently, you would not be here today. That's true, Your Honor, but the real question then, and this is a statement that appears in a number of the cases that I cited in my brief, justice is more important than due diligence. For the court to reach the right conclusion is more important than saying these out-of-state individuals should have kept more track of their attorney. Because what's going to happen is, as opposing counsel argued in their brief, well, they have a right against the landowner. They can go back and argue that she breached her contract for her right to convey the land. But if she owns the land, appellees are going to have a default judgment for my client's cutting the trees down on the property. She's going to prove on remand she actually owns the land, and we have no right against her. So I would ask the court then that justice is more important than due diligence, that reaching the right decision is important here. Appellees will still get their day in court, appellants will get their day in court, and the matter can be heard fully on remand. Thank you. May it please the court. Counsel, my name is Jeff Ducelli. I'm the attorney for Warren County Soil and Water Conservation District in Monmouth, Illinois. With me today is Rick Winn-Bigler, the executive director of Warren County Soil and Water Conservation District. My biggest point, I guess, is that the Lucas case is directly on point and should really, truly control the court's decision in this case. Before I get too deep into that, let me take issue with a little bit of what counsel had said. I believe that the trial court was clear in its written ruling when it said that it cannot relax the due diligence standard. Not that maybe it did, maybe it didn't. The trial court also did not find that Biederback owned all of the land in question. I believe the opinion of the trial court set forth the factual arguments of Mr. Walters, but made no findings of fact on those. Is this really a case about the difference between a technicality versus the facts and justice? I don't think it's a case between a technicality. I think it's a case as far as what is something that I believe was done correctly as a matter of law, as opposed to something that when the defendants in this case, Mr. Walters and others, failed to use due diligence to pay attention to their case. So I don't think it's technicality versus justice. I think it is a very serious determination of one, what the law is, and two, applying that law to this case. And you're talking about the law of 1401? Yes. Okay, and what about the law about really who owned the trees and who really... I mean, is it a judgment that's a windfall? Oh no, it is not. We're absolutely confident that the trees that we allege were cut, that were owned by Warren County, that the facts do indeed support that. And that's a determination that had there been an answer and discovery answers and all of that, would have been determined by the trial court at a hearing on the evidence. But what you're hearing from Mr. Sokin is just the allegations 16 months after a default judgment was entered to try to avoid the effect of that. I mean, we're really here on reviewing the trial court's 21401 ruling. Are we not? Yes. Okay, that's it. Correct. Okay. And he says his reasoning was under Vincent. I can't relax the due diligence standard. Yes. That's it, isn't it? Indeed it is. Under Vincent, and then also looking at the fact pattern under Lucas, and saying this case is directly on point and I'm bound by Lucas, and so this is what I must do. I believe that is what the trial court said. And with respect to Robichek, which is this court's decision, there was fraud involved in that case. Absolutely right. And here, this party hired a lawyer. They selected him, and then they didn't follow up and make sure he was doing the job they hired him to do for over a year. Absolutely correct. And they have not alleged that he fraudulently caused them to believe he was licensed. Correct. And we have nothing, the trial court has no reason to believe he was not licensed. And that is absolutely correct. And the things about other circumstances, no malpractice insurance and all that, that's just speculation. So to relax the due diligence requirement by this court, we have to say, don't worry about what kind of lawyer you hire. I think that is absolutely correct, that this court would have to do that. And in Robichek, as the court indicated, it was a fraud circumstance under a marital settlement agreement where at the trial, there was, the values were not appropriately disclosed. Clearly there was fraud on that one. In addition, there was an evidentiary hearing at the 2-1401 hearing. And I believe that Vincent also says that that's a circumstance that is outside of the holding then of Vincent. So Robichek is different from our case in a couple of different ways. The biggest one being fraud. The other one being how the court handled the 2-1401 motion. How the trial happened. Fraud makes a difference in 1401. Yes. Yeah, I believe that's absolutely correct. And then Vincent, as interpreted and implied by Lucas, is indeed directly on point. An attorney that was involved, that disappeared. In that case, there was an answer. In Lucas, there was an answer filed. There was no answer filed in our case. In Lucas, nine months elapsed between the judgment and the 2-1401 motion. In our case, it's 16, 16 months. So the trial court, given the status of Vincent and Lucas, in my view, had no option, alternative, but to do what it did. And I think that is absolutely correct, given the state of the law and given the facts as they appear in this case. So the finding by the trial court, was there a finding? It appears neither was, that there were meritorious defenses. I believe he would have described those that if he had the discretion to determine those, that he would have found that there were meritorious defenses. Plaintiff. Correct. For the 2-1401 motion. That's right. Yes. Which is the only thing we're here for. Correct. Yes. Yes. So, but, in my view, he didn't have to, because the standard was not his discretion. The standard was, as a matter of law, could the petitioner, Mr. Walters, prevail on his 2-1401 petition? And you need both. And you need both. Such fraud. Yes. Absolutely correct. So, I believe that the trial court was correct in its ruling, in its holding. I believe that this court, and ask for this court, then to uphold the ruling of the trial court, and dismiss the appeal. Thank you. Counsel. Thank you. Regarding this issue of fraud, I have come across no case that says, to relax the due diligence standard, there has to be fraud. None of the cases cited in my brief certainly say that. What they say is that the courts of law have acquired through 2-1401, and the history that led up to that motion from the writs of error, was that courts of law have, when the situation commands it, the ability to invoke equity, to undo a judgment that it believes is unjust, to do right and wrong. What the trial court actually held in its order was this. There's a decision in Lucas that suggests, I don't have this discretion anymore. There's a decision in Roca from the same court, from the first district, that is more recent, that is six to eight months after Lucas, that said, we're not following that. We're following the Borghetti decision out of the second district that says, we believe 2-1401 gives us the authority to do that. If you look at the text of 2-1401, it says, all relief heretofore available. It even specifically cites those writs of error. If that is the case, then that would mean the legislature has given the courts of law that same ability that they had back when Lincoln was practicing law. They had the ability to do right and wrong, to do justice. What Judge Morrison said was, I have to weigh these decisions. There's Vincent, which is seemingly out there and undoing 100 plus years of jurisprudence. There's the Lucas decision that says, well, I guess that case is right. And then there's Rocco from the same district that says, no, Lucas is wrong. Vincent is wrong. Vincent didn't really mean that. Vincent's a criminal case about a void judgment. It doesn't bring up due diligence. It doesn't have the two-year requirement. Vincent can't be wrong, but the interpretation of Vincent may be in error. Well, correct. Because if you look... Correct. If you look at the language they use in the section that was picked up upon in this case, which is about, it is wrong to think of it in the terms of discretion. The word discretion isn't quotes. I don't even know what that means. I mean, you would think they would just write the word in there, but they didn't. Then they said, it's wrong to think of it as strictly equitable. Putting the word strictly in there instead of just saying it's wrong to think it's equitable makes a world of difference. To me, that implies, well, there still is equity. And Judge Morrison said, if Vincent did not exist, if I had not read this confusing language in Vincent, if I had not read Lucas and I had not read Roca, which says Lucas is wrong, I would grant the petition. He specifically said it was hard for him to think of a more unjust facts scenario given that my clients, the appellants, had the right to log that land. They did the inquiry into the land to see who owned it. Martha Biederbeck owns it. And contrary to what the appellate's counsel said, the ruling was it appeared to the judge that Martha Biederbeck owned the land, not Warren County. That Martha Biederbeck, to him, in the 1401 petition, appeared to own the land. That would mean, then, that he thought it would be unjust to let non-landowners hold a $52,000 judgment for wrongfully cutting down trees that they don't even own. That's the real question. The real question is... When we're saying there's meritorious defenses, are we saying that the defenses are actually true? Well, no. He's saying on his review of the affidavits and the matters submitted, these are meritorious to the fact that if they are true and brought before the court, there's a possibility... There has to be a finding as to the truth of that. There would have to be a finding. I would submit, certainly, that if it was on remand, I would file a motion to dismiss and say we're bona fide purchasers for value. Here are the deeds they looked at. Here's the plat book. Looks like she owns the land. She gave us the right to own the land. I'd say, certainly, it would be a meritorious defense at this point. I'd say it's an absolute defense. If they're good faith purchasers, they paid value, they did the inquiry notice to look into the land. Thank you. The real question is... In 2-1401, do trial courts still have discretion to do justice by relaxing that due diligence requirement? In the Ropanak or Robichek, maybe I'm saying it wrong, this court said, we believe in this case we should relax the due diligence standard. This was five years after Vincent. So clearly in this district, we're still relaxing the due diligence standard. What does that mean to relax the due diligence standard? Does it mean there's any... What's our review standard? It means that in a situation in which the court finds that the judgment is just simply unjust, that we're not going to strictly hold a person to, well, you didn't keep better track of your attorney than you should, we're going to weigh that against the fact that, wait a minute, this is a judgment for rightfully cutting down trees and it's for $52,000. And in this case, sure, you weren't diligent. But we're going to relax that because to allow this judgment to hold would simply be unjust. It's not in good conscience to say, you did your job, you looked into the trees, you had the right to cut down the trees, but you still have a $52,000 judgment against you. Later on, you weren't as diligent as you should have been, but that the courts in Illinois are more concerned with doing what's right legally, reaching the legal conclusion that justice be done. And in this case, justice be done... Why is there a quantum of due diligence? You're like a binary, okay? Because there is no due diligence or there is due diligence. It's a lot like I know it when I see it. It would be hard for me to, you know, here's two facts and areas, which one's diligent? I don't think that's easily done. I think it's impossible to do, frankly. And I think that's why the Vincent decision, the extension that has been given is incorrect because that would require the trial court, did you meet the due diligence standard or Vincent? Well, what is that? My question goes back to the verb, relax. Are we relaxing or are we eliminating it? I think we're relaxing it. I think when we look at the situation, I cited the Levin's case in my brief, which holds that in that situation, more than 30 days elapsed from the execution of a default. And they held that that weighed against the other party and it went to their due diligence because had they immediately started collections, they would have been personally notified of what had happened. Then they could have stepped in and done that. So that's sort of a discussion, though, of due diligence. It is, again, a discussion of due diligence. And it seems to me, I mean, you're really arguing that there should only be one prong to this test. If you've got a real good meritorious defense and maybe if it's about a lot, then 1401 should be granted. That's true. That if your meritorious defense is so meritorious that it amounts to an absolute defense, that due diligence should be relaxed. If the court can say, well, wait a minute, it looks like they don't even know... I have a question about the relax again. It sounds to me you want to eliminate it. Relax or eliminate, it's fine. We could even say we're going to eliminate it in this situation or we're going to relax it so much that it looks like elimination. But all the old writs, coram nobis, coram vobis, all those require due diligence as well as meritorious. They require due diligence or a situation where justice said we're going to relax or eliminate due diligence. They all said, well, you've got to show some due diligence. And I think if you look at the facts here, there was due diligence. Before they hired Mr. Titchen, they were driving down to Warren County to discuss the case with the Attorney General, with the state's attorney. They were going to look at the land. They were discussing settlement even. It was only after they took the step to hire an Illinois lawyer that the case collapsed. So the due diligence has to do with the case. Correct. And not so much all the other stuff. Correct. It's about the case. Correct. But we do have to look... You emphasize due diligence about the case. But you do have to look at the totality of the circumstances and to see if there are any mitigating factors. And the fact of the matter is, before the case was filed but the dispute was ongoing, they were actively involved. The second they found out that Mr. Titchener had disappeared and that this judgment was against them, they hired new counsel and were extremely diligent in a very short amount of time. So the real question then is, how unjust does a judgment have to be to say, well, that year where you weren't as diligent as you should have been, too bad. You're still stuck with that judgment. And to go on remand and tell the appellants, you need to litigate against this landowner who's going to argue that she owns the land. Absolutely. So I would return to the maxim in the other cases that justice is more important than diligence, that it would be unjust to find that this judgment should stand. I would ask that the ruling be reversed. What was the date of the default judgment? I believe it was June of 2011. And nothing was done until the citation or the supplementary proceedings began? Nothing was done. There was the June 11 motion for default. Mr. Titchener filed his 1301 petition, which he never appeared on, and then was denied for the non-appearance. Nothing occurred until August or September of 2012 in which a citation proceeding was started on a bond holder that Walters Logging had given a logging bond to. And that's what brought this boil to a head? No. It was when Judge Morrison sua sponte removed Mr. Titchener and said, Mr. Titchener's now been disappeared for a year and a half. He sua sponte removed. Send notice to the defendants personally. There was a turnover order in September of 2012? I believe it was just a citation to discover. There was some post-appeal litigation that's still ongoing in the lower court regarding that bond turnover. But the sua sponte order to remove him, I believe, was in August of 2012, and then the hearing on the citation was in September of 2012. They should be in the appendix, but they're certainly in the common law record towards the end. Okay. Thank you. Anything else? Thank you. Thank you, Counsel. The court will take this matter under advisement and render a decision or ruling with dispatch. At this time, we'll take a short recess for a panel change.